**Thelma COLE, Plaintiff,**

v.

**STATE OF ALASKA, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, DIVISION OF MARINE HIGHWAY SYSTEMS, Defendant.**

No. A83–087 CIV.

United States District Court,
D. Alaska.

Aug. 20, 1984.

---

Jeffrey R. Walsh, San Francisco, Cal., William G. Azar, Anchorage, Alaska, for plaintiff.

Marilyn J. Kamm, Dept. of Justice, Anchorage, Alaska, for defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on defendant State of Alaska's motion to dismiss the complaint for lack of subject matter jurisdiction. Defendant's request for oral argument is denied in order to expedite the business of the court.

### a. BACKGROUND

Plaintiff alleges she was injured while on board the M/V Matanuska and in the employment of the State of Alaska. She seeks money damages against the state, alleging jurisdiction and substantive rights under the Jones Act, 46 U.S.C. § 688 and the general maritime law of unseaworthiness. The state argues that it has immunity to both the Jones Act and unseaworthiness claims under the Eleventh Amendment. The plaintiff argues that Alaska has either expressly or constructively waived its immunity to suit as to both claims.

### b. CONSTRUCTIVE WAIVER OF IMMUNITY TO JONES ACT

A state may waive its immunity by engaging in an activity regulated by Congress when Congress has constitutional authority to enact the regulatory statute and that statute authorizes suits against the state. *Department of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir.1983) *citing Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (state consents to waive immunity by operating a railroad as a common carrier subject to FELA). In *Cocherl v. Alaska*, 246 F.Supp. 328 (D.Alaska 1965), this court, applying *Parden*, held that Alaska had waived its Eleventh Amendment immunity to suit under the Jones Act by operating a ferry as a common carrier in interstate commerce on navigable waters. *Id.* at 330. In *Cocherl*, the court noted the express linkage of the Jones Act to the Federal Employers' Liability Act. *See also Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 546–47, 80 S.Ct. 926, 930–31, 4 L.Ed.2d 941 *cited in In re Holoholo*, 512 F.Supp. 889, 902–03 (D.Hawaii 1981). For the purposes of this motion to dismiss, the facts in *Cocherl* are indistinguishable from those claimed here.[1] Eight years after *Cocherl*, the Supreme Court was presented with a claim of constructive waiver by the state of Missouri as a result of Congress' inclusion of the state as employer within the coverage of the Fair Labor Standards Act. The Supreme Court declined to find a Congressional abrogation of immunity by the mere amendment of the FLSA to include certain state employers. *See Employees of Dept. of Public Health and Welfare v. Missouri*, 411 U.S. 279, 284–88, 93 S.Ct. 1614, 1617–19, 36 L.Ed.2d 251 (1973).

---

1. The defendant in reply has offered an affidavit evidencing subsidies and the lack of profitability of the Alaska Marine Highway System in an effort to characterize the ferry system as a governmental rather than proprietary activity. The court declines at this juncture and given the lack of notice to permit the conversion of this motion to dismiss into one for summary judgment by considering factual matters outside the pleadings.

The question presented is the effect of the subsequent Supreme Court decisions and this circuit's interpretations on the holding in *Parden*. According to Justice Douglas in *Employees*, *Parden* could be put aside because it involved a rather isolated state activity—the operation of a railroad as a common carrier for profit. With respect to state institutions not operated for profit, Congress would not abrogate immunity "without indicating in some way by clear language that the constitutional immunity was swept away." In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) Justice Rehnquist reconciled *Parden* and *Employees* as "cases involving a congressional enactment which by its terms authorized suit by designated plaintiffs against a class of defendants which literally includes states.... The question of waiver or consent under the eleventh amendment was found in those cases to turn on whether Congress had intended to abrogate the immunity in question and whether the state by its participation in the program authorized by Congress had in effect consented to the abrogation of the immunity."

Presumably, the difference in final results in the cases is explained by the presence in *Parden* of a Congressional intent to abrogate and the State's consent by participating as a proprietary common carrier by rail and by the absence of the same in *Employees*. In any event, nothing presented to the court suggests that *Parden* is no longer good law on its facts. *Cf. Scanlon v. Atascadero State Hosp.*, 735 F.2d 359, 361, (9th Cir.1984) (following *Parden's* use of broad statutory definition). Because *Cocherl* was grounded not on any extension of the facts in *Parden* but rather rested squarely on (1) the expressed extension of FELA to seamen in the Jones Act and (2) on analogous proprietary activity by the state as a common carrier, the court considers its holding in *Cocherl* undisturbed. *Accord, In re Holoholo*, 512 F.Supp. at 889–903; *Brody v. North Carolina*, 557 F.Supp. 184 (E.D.N.C.1983); *but cf. Sullivan v. Georgia*, 724 F.2d 1478 at 1481–82 (11th Cir.1984) (finding no clear statement in Jones Act of intent to abrogate immunity for non-profit research activity); *Faust v. South Carolina State Highway Department*, 721 F.2d 934 (4th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984) (no federal statute created private cause of action for pleasure boaters against state).

The court is aware of subsequent circuit court decision which have appended a strict "clear statement" test onto the *Parden* test for constructive waiver of immunity. *See, e.g., Intracoastal Transportation, Inc. v. Decatur County, Georgia*, 482 F.2d 361, 365 (5th Cir.1973) (drawbridge); *Riggle v. State of Calif.*, 577 F.2d 579, 584 (9th Cir.1978) (citing *Intracoastal* with approval) (state operated bridge); *see also Sullivan v. Georgia*, 724 F.2d 1478, 1480–81 (11th Cir.1984) (reviewing decisions) (nonprofit research). The Ninth Circuit has adopted the following test for establishing a waiver of immunity: "Eleventh Amendment immunity will be waived when [1] Congress has authorized suit against a class of defendants that includes states, and [2] the state enters into the activity regulated by federal law." *Mills Music, Inc. v. Arizona*, 591 F.2d 1278, 1285 (9th Cir.1979); *see also Department of Education, State of Hawaii v. Katherine D*, 727 F.2d 809 (9th Cir.1983); *Scanlon v. Atascadero State Hosp.*, 735 F.2d 359 (9th Cir.1984) (applying *Mills* test). In reviewing the precedent for finding Congressional intent to abrogate immunity in broad statutory definitions of defendant classes, this circuit cited the FELA and the Jones Act, as was applied to an interstate compact in *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), as examples of a state's inclusion within broadly defined defendant classes. The court considers these references by example to the FELA and the Jones Act indicative of the continuing validity of the major holding in *Cocherl*.

### Express Waiver

Because the court considers the doctrine of constructive waiver applicable and satisfied here, it declines to address plaintiff's

argument that the state has expressly waived immunity to suits under the Jones Act in its Attorney General Opinion No. 28.

### Count II—State's Liability for Unseaworthiness

In *Cocherl*, the court dismissed plaintiff's claims for unseaworthiness on the grounds that defendant's consent to suit under the Jones Act did not extend to consent to a claim based on general maritime law for unseaworthiness. *See Cocherl v. State of Alaska*, 246 F.Supp. at 330. Defendants move to dismiss the unseaworthiness claim on the basis of that authority. Plaintiffs argue that Alaska has by statute waived its Eleventh Amendment immunity from suit in federal court.

■ Alaska Stat. 09.50.250 provides, in pertinent part: "A person or corporation having a contract, quasi-contract or tort claim against the state may bring an action against the state in the superior court." Plaintiff analogizes this statute to Washington's general waiver of sovereign immunity at Wash.Rev.Code § 4.92.090 (Supp. 1982).[2] Plaintiff then argues that the court in *Metz v. State of Washington*, 558 F.Supp. 17, 19 (W.D.Wash.1982) found that this waiver of sovereign immunity "constituted a specific waiver of Eleventh Amendment immunity from suits under the general maritime law for 'unseaworthiness.'" Plaintiff has incorrectly represented the reliance which *Metz* places upon Wash.Rev. Code § 4.92.090. As Judge Beeks noted, a state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amendment immunity from suits in federal court. *Metz*, 558 F.Supp. at 19 *citing Riggle v. California*, 577 F.2d at

585. In finding a waiver of eleventh amendment immunity for unseaworthiness, Judge Beeks relied on Washington's express determination to operate its ferry as a common carrier and to be subject to a common carrier's liability for, *inter alia*, personal injury. Wash.Rev.Code 47.60.220 (1970); *see Metz*, 558 F.Supp. at 19. While the significance of Wash.Rev.Code 4.92.090 in Judge Beek's finding of a waiver of eleventh amendment immunity is not fully explained, it is clear that § 4.92.090 alone did not express the state's consent to suit in federal court. *See generally Great Northern Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944).

Plaintiff has cited Alaska Atty.Gen. Op.No. 28, August 28, 1963 in support of its argument that Alas.Stat. 09.50.250 is a waiver of eleventh amendment immunity. In that opinion, the attorney general concluded that the above cited statute permitted the state to be sued for negligent torts which arise under the Jones Act. *Id.* at 12. The opinion is silent, however, with respect to a waiver of eleventh amendment immunity to suits for unseaworthiness.

While it is apparent that Alaska Stat. 09.50.250 is not, in itself, a waiver of eleventh amendment immunity, this state's department of transportation has promulgated regulations governing the operation of the marine highway system which are in certain particulars comparable to Washington's common carrier statute, Wash. Rev.Code, 47.60.220, relied upon by Judge Beeks as evidencing a waiver of eleventh amendment immunity.[3] Specifically, both ferry systems operate upon navigable waters of the United States and Canada and

---

2. Wash.Rev.Code § 4.92.090 provides:
   The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person.

3. Wash.Rev.Code § 47.60.220 (1970) provides:
   The authority shall have all the obligations, duties and rights of a common carrier of persons and property in its operation of ferries, terminals or other facilities used in its ferry operations, including the right to participate in joint rates and through routes, agree-

ments, and divisions of through and joint rates with railroads and other common carriers and the right to make any filings with the interstate commerce commission, the United States maritime commission or any other state or federal regulatory or governmental body and to comply with the lawful rules and regulations and requirements of any such body, and shall be subject to laws relating to carrier's liability for loss or damage to property transported, and for personal injury or death of persons transported.

are subject to Coast Guard's jurisdiction. 17 AAC 70.070.[4]

Both ferry systems have subjected themselves to liability. Defendants suggest great significance may be found in the fact the state, by regulation, has attempted to limit its liability for personal injury to acts of gross negligence. *See* 17 AAC 70.-090(a)(7); *but see* 17 AAC 70.090(b) (ferry system otherwise subject to common law). In so doing, the Alaska ferry system, it is argued, has not assumed the liability of a common carrier and therefore, apparently, not waived immunity. Even assuming (1) that the regulation in question is properly construed to limit the ferry's liability for personal injury to acts of gross negligence and (2) that the regulation is enforceable as an exculpation of ordinary negligence, *see* Alaska Stat. 09.50.250 (general waiver of immunity), the court finds little evidence therein that the ferry system lacks the status of a common carrier. To the contrary, the Alaska Legislature has defined its ferries as vessels "used in the *common carriage* of passengers and self-propelled vehicles in intrastate commerce." Alaska Stat. 19.60.070(2) (1983 Supp.).

■ As in *Metz*, this court concludes that the express entry of Alaska into the common carriage of passengers on navigable United States and international waters, its express submission to Coast Guard regulation and jurisdiction, its consent to suit for personal injury (regardless of how limited) taken together evidence of waiver of eleventh amendment immunity for suits in federal court for recovery for personal injury based on unseaworthiness. In this aspect, the decision in *Cocherl v. Alaska* is overruled.

Accordingly, IT IS ORDERED:

THAT defendant's motion to dismiss is denied.

---

4. Unlike Washington, Alaska has not broadly subjected itself to ICC regulations. 17 AAC 70.-010 provides, in part:

> The ferry system has been classified by the U.S. Court of Appeals, Ninth Circuit, as a marine highway. Regulation of the Interstate Commerce Commission, United States Department of Transportation and/or Alaska Transportation Commission are not applicable.... The reference is apparently to *Alaska Steamship Company v. FMC*, 399 F.2d 623, 627 (9th Cir. 1968).