Ann WALKER, Plaintiff,

v.

ANDERSON ELECTRICAL CONNECTORS, et al., Defendants.

Civ. A. No. 89–AR–1482–M.

United States District Court, N.D. Alabama, M.D.

July 9, 1990.

Memorandum Opinion Aug. 6, 1990.

C. Michael Quinn, Ann K. Norton, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for Ann Walker.

William F. Gardner, William K. Thomas, Richard Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for Anderson Elec. Connectors.

John C. Falkenberry, Birmingham, Ala., for Local 2601 Intern. Ass'n of Machinist and Aerospace Workers.

Judy W. Evans, Harris Evans & Downs, P.C., Birmingham, Ala., for AMI Brookwood Medical Center.

## MEMORANDUM OPINION

ACKER, District Judge.

Plaintiff, Ann Walker, was permitted, in response to the jury verdict of June 19, 1990, to suggest to the court by special motion what judgment should be entered on that verdict. The pre-trial posture of the case is set out in *Walker v. Anderson Electrical Connectors*, 736 F.Supp. 253 (N.D.Ala.1990), and need not be repeated.

At this juncture, defendant-employer, Anderson Electrical Connectors, is understandably no longer complaining about the jury trial of a Title VII case (at least not in *this* case). This court, nevertheless, cannot resist a short addendum to its series of opinions holding that the parties to a Title VII case are entitled, upon demand, to trial by jury on the money issues, including the "back pay" issue, which many courts have described as a form of equitable relief thereby avoiding the Seventh Amendment issue. On April 10, 1990, a district court in Montana held: "Congress, in enacting the ADEA, did not abrogate the states' eleventh amendment immunity from suit in federal court and, consequently, the eleventh amendment precludes an award of back pay against a state thereunder." *Black v. Goodman*, 736 F.Supp. 1042, 1045 (D. Mont.1990). It is, of course, a well understood principle that the Eleventh Amendment provides states immunity from claims for legal relief but not from appropriate *equitable* relief. By finding the State of Montana immune from a claim for "back pay," the court was necessarily finding that "back pay" constitutes a legal remedy. It would be an impermissible anomaly for "back pay" to be a legal remedy under the ADEA but an equitable remedy under Title VII. If "back pay" is a legal remedy, the Seventh Amendment clearly controls who shall make the factual determinations.

After this case was submitted to the jury which Walker had demanded over defen-

dants' strenuous objection, the jury answered special interrogatories as follows:

1. Did defendant, Anderson Electrical Connectors (Square D), commit any act or acts of sexual harassment against plaintiff, Ann Walker, in violation of Title VII of the Civil Rights Act of 1964 at any time less than 180 days before plaintiff filed her complaint with the Equal Employment Opportunity Commission on February 28, 1989?

YES_X_ NO___

2. ONLY if the jury has answered "YES" to Question No. 1, did the said sexual harassment proximately cause plaintiff to lose any time from work?

YES___ NO_X_

3. ONLY if the jury has answered "YES" to Question No. 1 and "YES" to Question No. 2, state the amount of wages, if any, which plaintiff has proven by a preponderance of the evidence that she lost as a proximate result of defendant Anderson Electric Connectors' said conduct violating the Civil Rights Act.

$_____

4. Did defendant, Local 2601, International Association of Machinists & Aerospace Workers, commit any act or acts of sexual harassment against plaintiff, Ann Walker, in violation of Title VII of the Civil Rights Act of 1964 at any time less than 180 days before plaintiff filed her complaint with the Equal Employment Opportunity Commission on February 28, 1989?

YES___ NO_X_

5. ONLY if the jury has answered "YES" to Question No. 4, did the said sexual harassment proximately cause plaintiff to lose any time from work?

YES___ NO___

6. ONLY if the jury has answered "YES" to Question No. 4 and "YES" to Question No. 5, state the amount of wages, if any, which plaintiff has proven by a preponderance of the evidence that she lost as a proximate result of defendant, Local 2601, International Association of Machinists & Aerospace Workers', said conduct violating the Civil Rights Act.

$_____

7. Did defendant, Anderson Electric Connectors (Square D), invade the privacy of plaintiff, Ann Walker?

YES_X_ NO___

8. ONLY if the jury has answered "YES" to Question No. 7, did the said invasion of plaintiff's privacy proximately cause plaintiff any injury?

YES___ NO_X_

9. ONLY if the jury has answered "YES" to Question No. 7 and "YES" to Question No. 8, state the amount of compensatory damages, if any, which plaintiff has proven by a preponderance of the evidence that she sustained as a proximate result of said defendant's invasion of plaintiff's privacy (giving said defendant credit for any lost wages which may have been awarded by the jury in answer to Question No. 3, that is, if the jury finds the said lost wages to have been proximately caused both by invasion of privacy and by sexual harassment).

$_____

10. ONLY if the jury has answered "YES" to Question No. 8 and ONLY if the jury finds that plaintiff, Ann Walker, has proven by clear and convincing evidence that defendant Anderson Electrical Connectors consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff, state the amount of punitive damages to be assessed against defendant, Anderson Electrical Connectors, for the purpose of punishing it and deterring similar future acts of invasions of privacy.

$_____

Neither Walker's complaint nor her statement-of-position in the pre-trial order indicated any intention by her to seek any form of relief except monetary damages and attorney's fees. There was no request for reinstatement or for any kind of declaratory, injunctive or other equitable relief. This fact made it easier than it otherwise would have been for this court to grant plaintiff's demand for a jury trial. Certainly, the absence of any prayer for equitable

relief subtracted somewhat from defendants' arguments against trial by jury.

The court did not give any instruction to the jury on "nominal damages." There was no such charge requested by Walker and no exception taken to the court's failure to charge on "nominal damages" as an alternative form of compensation.

In her post-verdict motion, Walker asks this court to award her nominal damages, to grant her declaratory and injunctive relief, including a declaration that she is the prevailing party, and to grant her attorney's fees under 42 U.S.C. § 1988.

Under any view of the jury responses, it is obvious that Walker did not prevail against the union defendant, Local 2601, International Association of Machinists & Aerospace Workers. Therefore, Local 2601 is, without question, entitled to a final judgment in its favor.

■ As to defendant-employer, Anderson Electrical, the jury found that it had committed one or more acts of sexual harassment against Walker in violation of Title VII of the Civil Rights Act of 1964, but the jury also found that Walker suffered no lost time from work, and thus no monetary loss as a proximate result of the said harassment. With respect to Walker's pendent state claim for invasion of privacy, the jury similarly found that Anderson Electrical's invasion of Walker's privacy caused Walker no injury.

It is tempting to speculate about the jury's rationale. From the evidence, it theoretically could be that the jury found only one act of sexual harassment by the former Anderson Electrical supervisor, who, incidentally, was a prominent witness for Walker. This could logically explain the finding of harassment without injury. It is also theoretically possible that the jury found that Walker provoked undue male familiarity and thus proximately caused her own injury, if any. It alternatively could be that the jury found that Walker's psychological condition and resulting hospitalization was feigned, or was the product of drug abuse, or was the product of childhood psychological trauma and was not the proximate consequence of any harassment

in the work place. These are, of course, mere speculations, which, though perhaps justified by the evidence, cannot be used as an excuse for substituting the court's judgment for that of the jury. The entire purpose of the Seventh Amendment, a purpose which this court subscribes to as much as the framers subscribed to it, if applied in Title VII cases as this court has done, and believes must be done, would be lost if the court allowed itself to second-guess the jury. This court does not know, and will not state, what it would have done had this been a bench trial and had it been called upon to evaluate the various witnesses for their credibility. With the jury sitting in the box as mandated by the Seventh Amendment, this court deliberately left the weighing of the evidence to the jurors.

■ Walker argues that this court's discretionary powers under Title VII include the right to develop appropriate relief beyond what the jury gave. Walker argues that the court is *required* under these precise circumstances to award at least nominal damages in recognition of Walker's success on the liability question. Walker's argument is flawed in several respects, and all of the flaws are occasioned by two facts: (1) that this was a jury trial, and (2) that Walker never requested nominal damages as an alternative form of relief. By failing to take exception to the jury charge which did not mention nominal damages, Walker gave up that option. Also, insofar as Walker's request for nominal damages is concerned, even nominal damages, if they are to be awarded, must be the *proximate consequence* of the wrongful act complained of, and the jury in this case rejected any such causal connection. It was undisputed that Walker has been off work and lost wages. This necessarily means that the jury found against her on the issue of proximate cause. Furthermore, Walker cites no authority for the right of a court to award nominal damages after a jury has found no damage whatsoever. A helpful and very recent indication that Walker's would-be proposition is erroneous is contained in *Hattaway v. McMilli-*

*an*, 903 F.2d 1440 (11th Cir.1990). There the Eleventh Circuit said:

> [W]e note that a long line of consistent decisions of the United States Supreme Court forbid the plaintiff from accepting a remittur—even under protest—and then appealing the order granting the remittur. *See Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649–50, 97 S.Ct. 835, 836–37, 51 L.Ed.2d 112 (1977) (per curiam) (noting cases). This principle applies as a matter of federal procedure in "either a state or federal cause of action." *Id.* at 650, 97 S.Ct. at 837. Finally, we note that there are no federal cases applying these principles to an additur order. Of course, the paucity of federal precedent is not surprising given the fact that *the order of an additur by a federal court violates the seventh amendment right to a jury trial in civil cases. Dimick v. Schiedt*, 293 U.S. 474, 486–88, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976).

903 F.2d at p. 1451 (footnote omitted) (emphasis supplied).

The *Hattaway* court agrees with this court that a jury's verdict precludes the possibility of adding any money to the verdict, whether a million dollars or a dollar.

Rule 16(e), F.R.Civ.P., forever locked the door against Walker as to relief beyond the relief she claimed in the pre-trial order. Walker chose her strategy, forcing Anderson Electric to choose its strategy. It would be disingenuous of any court to find at this late date that this pre-trial order can be modified post-trial in order to "prevent manifest injustice." See Rule 16(e). It would be manifestly *unjust* for the court to grant relief which Walker did not seek and which the jury did not give.

Walker, even now, conspicuously does not ask for the equitable remedies of restitution or so-called "front pay." If this is not because she did not ask for any such relief in the pre-trial order, it is because Anderson Electrical is prepared to take her back as soon as she is released by her doctor for work. She never claimed that she was constructively discharged.

■ Assuming *arguendo* that this court could assume the power to enjoin Anderson Electrical not to commit future acts of sexual harassment against females, this court would decline to do so, believing: (1) that in an individual's case (as contrasted with a class action), any injunctive relief should be limited to the individual plaintiff; (2) that Anderson Electrical has already rid itself of the highest profile sexual harasser, Walker's own witness; (3) that Anderson Electrical's written policy against sexual harassment contains basically the same provisions which an injunction would contain; (4) that Title VII itself, bolstered by the jury finding in this case, provides an adequate warning to Anderson Electrical and a sufficient guarantee against future sexual harassment; and (5) that the future monitoring of an injunction in a non-class-action case would be impossible at worst and unduly burdensome at best.

■ This court is hesitant to mention an issue not raised by either party. The court mentions it, nevertheless, for what effect it may have. During the trial, it became apparent for the first time, at least to the court, that Walker was adjudicated bankrupt under Chapter 7 after any claim or cause of action presented by Walker in this case had accrued. Her claims against Anderson Electrical and Local 2601 were not listed on her bankruptcy schedules. They should have been so listed, because all of her claims for money or property became the property of her bankruptcy estate. After bankruptcy, she personally would have had no standing to pursue these particular claims, or any other claim accruing pre-bankruptcy. *See Harris v. St. Louis University*, 114 B.R. 647 (E.D. Mo.1990), and cases cited therein. In the instant case, the fact that Walker has been discharged in bankruptcy and that her trustee-in-bankruptcy, on behalf of her creditors, abandoned all unmarshalled assets, may repair the jurisdictional damage. If Walker's trustee or a sophisticated creditor had known of her great expectations from this case, as testified to by some of the witnesses, they would have been ecstatic. As of now, any complaint by Walk-

er's trustee or by a creditor would be quixotic.

Lastly, the court notes that Walker does not ask for a new trial. By noting this fact, the court does not mean to suggest that a new trial would be granted if Walker should now invoke Rule 59, F.R.Civ.P.

A separate final judgment will be entered.

## MEMORANDUM OPINION

Plaintiff, Ann Walker, has moved for reconsideration and alteration of the final judgment entered against her on July 9, 1990. She has alternatively moved for a new trial limited to the question of the amount of damages to be assessed against defendant, Anderson Electrical Connectors. Neither motion attacks the judgment entered on the verdict rendered in favor of the other defendant, Local 2601, International Association of Machinists and Aerospace Workers.

Walker repeats her earlier post-verdict insistence that she be awarded nominal damages by the court. She also argues that her action achieved significant changes in her employer's policies regarding the work environment, justifying her being deemed the prevailing party for purposes of 42 U.S.C. § 1988. After rethinking these questions, the court finds no reason to alter the conclusions it reached on July 9, 1990.

### I. Nominal Damages Are Not Available to Vindicate a Jury–Tried Claim for Sexual Harassment.

For the imposition of nominal damages, plaintiff relies upon Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which stands for the proposition that the violation of certain absolute rights may entitle a plaintiff to nominal damages even without proof of actual damage. In Carey, the Supreme Court found that "procedural due process" was such an absolute right. The first noticeable difference between Carey and Walker's case is that

"due process" and "sexual harassment" are like apples and oranges. It is hard to argue that freedom from sexual harassment is an absolute constitutional right. Another very significant difference between Carey and Walker's case is that Walker was tried to a jury empaneled on plaintiff's demand. That jury expressly found that defendant's conduct did not proximately cause plaintiff any damage. In other words, Walker attempted to prove actual damage as a proximate result of sexual harassment and failed. In Carey no evidence of damage was even offered by the plaintiff, who instead chose to rely upon the pure principle of vindication for which nominal damages might be awarded. In Carey, the Supreme Court quoted the trial court as follows:

"Plaintiffs put no evidence in the record to qualify their damages, and the record is completely devoid of any evidence which could even form the basis of a speculative inference measuring the extent of their injuries. Plaintiffs' claims for damages therefore fail for complete lack of proof."

98 S.Ct. at 1046.

The failure of the plaintiff in Carey to prove actual damages was thus a deliberate choice, whereas Walker opted for nominal damages only after having tried and failed to prove actual damages to the jury. Lastly, the Supreme Court was careful in Carey to recognize that the award of nominal damages for a denial of "due process" without any proof of actual damage was a narrow exception to the usual rule. The Court recognized such an exception only where there was no "common law analogue." In Walker's case, Walker herself sought a state remedy, or "analogue," when she claimed an invasion of her privacy, an Alabama tort.[1] If this court cannot award Walker nominal damages for an invasion of privacy, as Walker apparently concedes, the court cannot award Walker nominal damages for a Title VII violation if the lesson of Carey is applied.

---

**1.** The jury, consistent with its response to Walker's Title VII claim, found Anderson Electrical technically guilty but also found that Walker had not sustained any damage as a proximate consequence.

## II. New Trial on Issue of Damages Alone Is Prohibited by Seventh Amendment.

When a jury has fixed the amount of damages, whether at zero or at a million dollars, the same Seventh Amendment upon which Walker relied for her jury demand precludes the court from imposing an *additure*. In *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed.603 (1935), the Supreme Court said:

> The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts. In dealing with questions like the one now under consideration, that distinction must be borne steadily in mind. Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact. Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off an excrescence. But where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict. When, therefore, the trial court here found that the damages awarded by the jury were so inadequate as to entitle plaintiff to a new trial, how can it be held, with any semblance of reason, that that court, with the consent of the defendant only, may, by assessing an additional amount of damages, bring the constitutional right of the plaintiff to a jury trial to an end in respect of a matter of fact which no jury has ever passed upon either explicitly or by implication? To so hold is obviously to compel the plaintiff to forego his constitutional right to the verdict of a jury and accept "an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess."
>
> It is said that the common law is susceptible of growth and adaptation to new circumstances and situations, and that the courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule; and some attempt is made to apply that principle here. The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions. *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933). But here, we are dealing with a constitutional provision which has in effect adopted the rules of the common law, in respect of trial by jury, as these rules existed in 1791. To effectuate any change in these rules is not to deal with the common law, *qua* common law, but to alter the Constitution. The distinction is fundamental, and has been clearly pointed out by Judge Cooley in 1 Const. Limitations, 8th ed., 124.
>
> It is worthy of note that while for more than a century the federal courts have followed the approved practice of conditioning the allowance of a new trial on the consent of plaintiff to remit excessive damages, no federal court, so far as we can discover, has ever undertaken similarly to *increase* the damages, although there are numerous cases where motions for new trial have been made and granted on the ground that the verdict was inadequate.

293 U.S. at pp. 486–487, 55 S.Ct. at p. 301 (emphasis supplied).

While *Dimick* proves that this court was correct in granting plaintiff a jury trial, its help to plaintiff comes to an end at that point. Why? Because Walker does not ask for a complete new trial. She only asks alternatively for a new trial *on the issue of damages*. Even if she had asked for a new trial on all issues, the court would be unable to find that the damage award of zero was so inadequate as to call

for a complete new trial, because this jury found that there was *no injury whatsoever traceable to any wrong committed by Anderson Electrical.* The jury quite clearly found against Walker on the issue of proximate causation. This is dissimilar to a hypothetical case in which a jury finds misconduct by a defendant proximately causing plaintiff indisputably serious injury, including $10,000.00 in medical expenses, but renders a $100.00 verdict. If such were the case here, a complete new trial might be in order, but *additur* would not be proper because, as Dimick says, *additur* would violate the Seventh Amendment.

Although not cited by Walker, this court has found and has considered *Hicks v. Brown Group, Inc.,* 902 F.2d 630 (8th Cir. 1990). Even if the Eighth Circuit is correct in *Hicks,* its opinion there is easily distinguishable. There, the district court added $1.00 in nominal damages only after a jury had awarded $10,000.00 in punitive damages without awarding any actual damages. The jury had been instructed on punitive damages but, for aught appearing, had not been instructed on the necessity of awarding at least nominal damages as a prerequisite to punitive damages. In Walker's case, there was no possibility of punitive damages being awarded against Anderson Electrical under her Title VII claim. More importantly, this court seriously doubts the correctness of *Hicks,* in which there was a strong dissent. The Eighth Circuit seems to want to overrule the Supreme Court's *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). This court agrees with the dissent in *Hicks* that *Patterson* precluded that particular action brought under 42 U.S.C. § 1981. If this court and the dissenter in *Hicks* are correct, the pronouncements by the Eighth Circuit on an *additur* of nominal damages become moot. Other courts promptly declined to follow *Hicks. See Kozam v. Emerson Elec. Co.,* 739 F.Supp. 307 (N.D.Miss. 1990); *McKnight v. Gen. Motors Corp.,* 908 F.2d 104 (7th Cir.1990).

III. Walker is Not a Prevailing Party Under 42 U.S.C. § 1988.

Walker is asking this court to reach conclusions beyond the issues presented and not justified by the evidence. Walker sought no injunctive relief, and there was no credible evidence that any change in procedure or rule by Anderson Electrical was the proximate result of Walker having brought suit. The issue of entitlement under 42 U.S.C. § 1988 has been fully addressed in the opinion of July 9, 1990.

## CONCLUSION

For the reasons stated above, as well as for the reasons expressed in the memorandum opinion of July 9, 1990, plaintiff's post-judgment motions will be denied.